Brent M. Giddens, State Bar No. 133652
bgiddens@cfdlaborlaw.com
Daphne P. Bishop, State Bar No. 217519
dbishop@cdflaborlaw.com
CAROTHERS DI SANTE & FREUDENBERG LLP
707 Wilshire Blvd., Ste. 5150
Los Angeles, California 90017
Telephone: (213) 612-6300
Facsimile: (213) 612-6301

Daren S. Garcia, Ohio State Bar No. 0077156
dsgarcia@vorys.com
Tyler B. Pensyl, Ohio State Bar No. 0080649
tbpensyl@vorys.com
*Admitted Pro Hac Vice*
VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street
Columbus, Ohio 43216-1008
Telephone: (614) 464-5446
Facsimile:  (614) 719-5054

Attorneys for Defendants Abercrombie & Fitch Stores, Inc.,
Stephanie Charles, and Meghan Watumull

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JILLIAN HALLMAN, an individual,<br><br>     Plaintiff,<br><br>     vs.<br><br>ABERCROMBIE & FITCH CO., an Ohio Corporation; STEPHANIE CHARLES, an individual; MEGHAN WATUMULL, an individual; DOES 1-25, Inclusive,<br><br>     Defendants. | Case No. CV13-02139 ODW ISS<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Judge: Hon. Otis D. Wright<br>Courtroom: 11 - Spring St. Floor<br>Date: September 23, 2013<br>Time: 1:30 p.m. |

i

# **TABLE OF CONTENTS**

I.      INTRODUCTION..................................................................................1

II.     HALLMAN HAS NOT RAISED A GENUINE ISSUE OF MATERIAL
        FACT.................................................................................................1

        A. Hallman Has Conceded The Material Facts And Failed To Submit
           Admissible Evidence Contradicting Any Material Fact....................1

        B. The Material Facts Related To Hallman's Race Discrimination And
           Harassment Claims Are Not In Dispute.......................................6

        C. The Material Facts Related To Hallman's Retaliation For Complaining
           About Discrimination And Harassment Claim Are Not In Dispute........7

        D. The Material Facts Related To Hallman's Leave And Termination Are
           Not In Dispute.....................................................................8

        E. The Material Facts Related To Hallman's Retaliation For Engaging In
           Protected Activity Claim Are Not In Dispute.............................10

III.    LAW AND ARGUMENT.......................................................................11

        A. Hallman's Race Discrimination Claim Fails As A Matter Of Law.......11

           1. There Is No Direct Evidence Of Discrimination....................11

           2. Hallman Cannot Maintain A Race Discrimination Claim Under
              The *McDonnell Douglas* Framework................................14

              a.  Hallman Cannot Establish a *Prima Face* Case...............14

              b.  Hallman Cannot Show Pretext.................................15

        B. Hallman's Race Harassment Claim Fails As A Matter Of Law...........17

        C. Hallman's Retaliation For Reporting Harassment And Discrimination
           Claim Fails As A Matter Of Law..............................................19

        D. Hallman's Failure To Prevent Discrimination And Harassment Claim
           Fails As A Matter Of Law......................................................21

        E. Hallman's Wrongful Termination In Violation Of Public Policy Claim
           Fails As A Matter Of Law......................................................22

F.  Hallman's Emotional Distress Claims Fail As A Matter Of Law.........22

G.  Hallman's Retaliation In Violation Of FMLA Claim Fails As A Matter Of Law.....................................................................................23

H.  Hallman's Retaliation For Engaging In Protected Activity Claim Fails As A Matter Of Law.......................................................24

1.  Hallman Did Not Engage In Protected Activity.....................24

2.  There Is No Causal Link Between Hallman's Complaint About Meal And Rest Breaks And Her Termination................24

IV. CONCLUSION.....................................................................25

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

# **TABLE OF AUTHORITIES**

**Cases**

*Abram v. City & County of San Francisco Dep't of Pub. Health,*
   357 F.App'x 142 (9th Cir. 2009)...................................................17

*Alcala v. Best Buy Stores, LP,* No. EDCV-11-00798, 2012 U.S. Dist. LEXIS
   181892 (C.D. Cal. Nov. 7, 2012)......................4-5, 11, 12, 16, 20, 21

*Allen v. City of L.A.,* 2012 U.S. Dist. LEXIS 65775 (C.D. Cal. May 7, 2012)........4

*Ang v. Dalton,* No. 99-55151, 2000 U.S. App. LEXIS 20209
   (9th Cir. Aug. 10, 2000)..........................................................11, 12

*Arevalo v. Hyatt Corp.,* No. CV-12-7054, 2013 U.S. Dist. LEXIS 68568
   (C.D. Cal. May 13, 2013).............................................................20, 21

*Big Baboon Corp. v. Dell, Inc.,* 2010 U.S. Dist. LEXIS 108027
   (C.D. Cal. Oct. 8, 2010)..................................................................2

*Black v. Baxter Healthcare Corp.,* No. 96-55749,
   1997 U.S. App. LEXIS 30422 (9th Cir. 1997)..................................22

*Bowers v. NCAA,* 563 F. Supp. 2d 508 (D.N.J. 2008)................................3

*Boyd v. AutoZone, Inc.,* No. C-11-00776, 2012 U.S. Dist. LEXIS 138552
   (N.D. Cal. Sept. 26, 2012)..............................................................23

*Casagrande v. Allied Blending & Ingredients, Inc.,* No. CV-12-00498,
   2013 U.S. Dist. LEXIS 4796 (C.D. Cal. Jan. 10, 2013)...................21, 22

*Cristobal v. Siegel,* 26 F.3d 1488 (9th Cir. 1994)......................................5

*Davis v. Vitamin World, Inc.,* No. CV-11-00367,
   2011 U.S. Dist. LEXIS 134723 (C.D. Cal. Nov. 21, 2011)...........13, 14, 16

*Day v. Sears Holdings Corp.,* No. CV-11-09068,
   2013 U.S. Dist. LEXIS 41052 (C.D. Cal. Mar. 13, 2013)............18, 19, 20

*Delaney v. Lynwood Unified Sch. Dist.,* No. CV-07-05049,
   2009 U.S. Dist. LEXIS 69426 (C.D. Cal. Aug. 6, 2009).......................17

*Dimitrov v. Seattle Times Co.,* No. 98-36156,

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

2000 U.S. App. LEXIS 22402 (9th Cir. Aug. 29, 2000)...................11, 12

*E.E.O.C. v. Abercrombie & Fitch Stores, Inc., et al.*, No. 4:08-1470

    (E.D. Mo. filed Sept. 25, 2008)....................................................4

*E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, No. 4:09-cv-00602-GKF-FHM

    (N.D. Ok. Filed Sept. 16, 2009)...................................................4

*Fiatoa v. Keala*, 191 F.App'x 551 (9th Cir. 2006)........................9, 15, 23

*Frederick v. City of Portland*, No. 95-35389,

    1996 U.S. App. LEXIS 26700 (9th Cir. Oct. 10, 1996)...................4, 16

*Githere v. Consol. Amusement Corp.*, 258 F.App'x 122 (9th Cir. 2007)..............5

*Granillo v. Exide Techs., Inc.*, No. CV-10-1080,

    2011 U.S. Dist. LEXIS 130669 (C.D. Cal. May 20, 2011)...............17-18

*Hooker v. Parker-Hannifin Corp.*, No. SACV-11-483,

    2012 U.S. Dist. LEXIS 49144 (C.D. Cal. April 3, 2012)..............14-15, 18

*Iorio v. Allianz Life Ins. Co. of N. Am.*, 2008 U.S. Dist. LEXIS 118344

    (S.D. Cal. July 8, 2008).............................................................3

*Jackson v. Simon Property Group, Inc.*, 795 F.Supp.2d 949

    (N.D. Cal. 2011)............................................................9, 15, 23

*Jim v. County of Hawaii*, 33 F.App'x 857 (9th Cir. 2002).......................4, 16

*John M. Floyd & Assocs. v. TAPCO Credit Union*, No. 12-35307,

    2013 U.S. App. LEXIS 17513 (9th Cir. Aug. 21, 2013).......................5

*Johnson v. Cty. of Yolo*, No. 2:12-cv-00812,

    2013 U.S. Dist. LEXIS 24955 (E.D. Cal. Feb. 22, 2013)....................18

*Kaplan v. Dr. Reddy's Labs., Inc.*, No. CV-10-00675,

    2010 U.S. Dist. LEXIS 104330 (C.D. Cal. Sept. 30, 2010)..................19

*Kramas v. Security Gas & Oil, Inc.*, 672 F.2d 766 (9th Cir. 1982)...................4

*Krieg v. U.S. Foodservice, Inc.*, No. C 10-02491,

    2011 U.S. Dist. LEXIS 103926 (N.D. Cal. Sept. 14, 2011)..............13, 14

*L.A. Printex Indus. v. Lia Lee, Inc.*, No. CV08-1836,

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

2009 U.S. Dist. LEXIS 28477 (C.D. Cal. Mar. 23, 2009).........................5

*Liu v. Colvin*, No. 11-cv-6120, 2013 U.S. Dist. LEXIS 57423

(N.D. Cal. April 22, 2013).................................................13, 14, 16

*Maharaj v. California Bank & Trust*, No. 2:11-cv-00315,

2012 U.S. Dist. LEXIS 163684 (E.D. Cal. Nov. 15, 2012)...........9, 15, 23

*Marino v. Akal Sec. Inc.*, 377 F.App'x 683 (9th Cir. 2010)..........................24

*Meraz v. Jo-Ann Stores, Inc.*, No. CV-03-2914,

2004 U.S. Dist. LEXIS 7533 (C.D. Cal. April 2, 2004).......................19

*Mondares v. Kaiser Found. Hosp.*, No. 10-cv-02676,

2013 U.S. Dist. LEXIS 975 (S.D. Cal. Jan. 3, 2013)..........................22

*Negley v. Judicial Council of California*, 458 F.App'x 682 (9th Cir. 2011).........20

*Nesbit v. Pepsico, Inc.*, 994 F.2d 703 (9th Cir. 1993).........................13, 14, 16

*Nidds v. Schindler Elevator Corp.*, 113 F.3d 912 (9th Cir. 1996)...........13, 14, 16

*Peralta v. City and County of San Francisco*, 427 F.App'x 616 (9th Cir. 2011)...17

*Peters v. Shamrock Foods Co.*, 262 F.App'x 30 (9th Cir. 2007)...............11, 12

*Pleasant v. Autozone, Inc.*, No. CV-12-07293,

2013 U.S. Dist. LEXIS 86360 (C.D. Cal. June 19, 2013)....................22

*Ramirez v. County of Marin*, No. C-10-02889,

2011 U.S. Dist. LEXIS 123363 (N.D. Cal. Oct. 25, 2011)...............13, 16

*Rosales v. Career Sys. Dev. Corp.*, 2009 U.S. Dist. LEXIS 101808

(E.D. Cal. Nov. 1, 2009)......................................................4

*Shaaban v. Covenant Aviation Sec.*, No. CV 08-03339,

2009 U.S. Dist. LEXIS 104996 (N.D. Cal. Nov. 10, 2009).........9, 15, 23

*Stevens v. County of San Mateo*, 267 F.App'x 684 (9th Cir. 2008)..................18

*See Surrell v. California Water Serv. Co.*, 518 F.3d 1097 (9th Cir. 2008)..........19

*Thompson v. City of Monrovia*, 186 Cal. App. 4th 860 (Cal. App. 2d Dist. 2010)..21

*Troutman v. Unum Life Ins. Co. of Am.*,

2008 U.S. Dist. LEXIS 53756 (N.D. Cal. July 14, 2008).....................2

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

1    *United States v. Gilbert*, 668 F.2d 94 (2d Cir. 1981)........................................3

2    *Villasenor v. Sears, Roebuck & Co.*, No. CV-09-9147,

3        2011 U.S. Dist. LEXIS 4301 (C.D. Cal. Jan. 18, 2011)...................19, 20

4    *Wu v. Boeing Co.*, No. SACV-11-1039,

5        2012 U.S. Dist. LEXIS 119233 (C.D. Cal. Aug. 22, 2012)...................13

6    **Statutes**

7    Fed. R. Evid. 801.......................................................................4, 16

8    Fed. R. Evid. 802.......................................................................4, 16

9    Fed. R. Evid. 901..........................................................................4

10   29 U.S.C. § 2612(a)....................................................................9, 15

11   29 C.F.R. § 825.200(a).................................................................9, 15

12   California Labor Code § 1102.5.........................................................23

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

## I.      INTRODUCTION

Plaintiff Jillian Hallman ("Hallman") has failed to identify any genuine issue of material fact that precludes summary judgment for Defendants Abercrombie & Fitch Stores, Inc. ("Abercrombie"), Stephanie Charles, and Megan Watumull (collectively, "Defendants").  Hallman concedes that she failed to return to work after receiving more than twelve weeks of leave under the Family Medical Leave Act ("FMLA").  Hallman was terminated because she failed to return to work after receiving her full leave entitlement – a lawful, legitimate, and nondiscriminatory reason for her termination.  Hallman has not presented any evidence establishing that Defendants' reason for terminating her is pretextual.  Thus, Hallman's claims asserting she was terminated for an unlawful reason, including her race discrimination, retaliation for reporting harassment and discrimination, wrongful termination, retaliation in violation of FMLA, and retaliation for engaging in protected activity[1] claims, all fail as a matter of law.  Hallman's race harassment claim also fails because Hallman also has not put forth evidence establishing that she was subjected to racial harassment, and certainly not the type of severe and pervasive racial harassment that is required to maintain a race harassment claim.  Finally, Hallman's emotional distress claims fail because she has not put forth evidence establishing she was subjected to discrimination, retaliation, or harassment.

## II.     HALLMAN HAS FAILED TO RAISE A GENUINE ISSUE OF MATERIAL FACT.

### A. Hallman Has Conceded The Material Facts And Failed To Submit Admissible Evidence Contradicting Any Material Fact.

Hallman concedes 54 out of the 125 Statements of Undisputed Fact presented by Abercrombie with its Motion for Summary Judgment.  As set forth

---

[1] This claim also fails because Hallman did not engage in protected activity.

1

below, these concessions are fatal to Hallman's claims because they establish that she received more than twelve weeks of FMLA leave, that she failed to return to work after receiving this leave, and that she was terminated for failing to return to work after receiving this leave. (*See* Plaintiff's Statement of Genuine Disputes of Material Facts ("SMF") at 83, 85, 91-93, 109 (Dock. No. 32).)  Indeed, Hallman even admits that she was terminated for failing to return to work after her FMLA leave expired. (Plaintiff's Response to Defendants' Statement of Undisputed Facts ("Response to SUF") at 24-27 (Dock. No. 32).)

For the facts Hallman has disputed, her contentions are baseless.  Indeed, each alleged dispute of a material fact is based on either on inadmissible evidence or an unsupported contention.  First, Hallman improperly attempts to rely on a class action settlement in a prior case related to meal and rest breaks to support her retaliation for engaging in protected activity claim. (*See* SMF 3; Response to SUF 29-30, 32.)   This evidence is inadmissible.   Federal Rule of Evidence 408 precludes Plaintiff from offering evidence of a settlement agreement for the purpose of proving liability or past misconduct.  *See e.g., Big Baboon Corp. v. Dell, Inc.*, 2010 U.S. Dist. LEXIS 108027, 13-14 (C.D. Cal. Oct. 8, 2010) (citing *Hudspeth v. C.I.R.*, 914 F.2d 1207, 1213-14 (9th Cir. 1990) (in excluding evidence of settlement, court noted that Fed. R. Evid. 408(a) "prohibits the admission of compromises as evidence 'when offered to prove liability'…. According to the Ninth Circuit, 'two principles underlie Rule 408: (1) the evidence of compromise is irrelevant, since the offer may be motivated by desire for peace rather than from any concession of weakness of position; (2) a more consistently impressive ground is promotion of the public policy favoring the compromise and settlement of disputes.'"); *Troutman v. Unum Life Ins. Co. of Am.*, 2008 U.S. Dist. LEXIS 53756, 20-21 (N.D. Cal. July 14, 2008) (holding that settlement agreement was inadmissible as "evidence of past misconduct" and noting that "settlement agreement expressly provides that it shall not be offered by the parties thereto as

"evidence of or an admission. . .or concession of any liability or wrongdoing whatsoever."). Moreover, the class action settlement specifically provides that it shall not be construed as an admission or concession of any violations or failures to comply with any applicable law and that it shall not be admissible as evidence in any action in any manner whatsoever. (Settlement Agreement, Doc. 1-22 at 15, Pageid #180.) Finally, the class action settlement is irrelevant. Hallman has not asserted, and is in fact barred by release from asserting, a claim for failure to provide meal and rest breaks. Thus, the class action settlement has no relevance to Hallman's claims.

Second, in an attempt to support her race discrimination and harassment claims, Hallman improperly attempts to rely on prior class action lawsuit and consent decree. (*See* SMF 9-13; Response to SUF .) This evidence is inadmissible for several reasons. It is well established that Fed. R. Evid. 408 precludes Plaintiff from offering evidence of a consent decree for the purpose of proving liability or past misconduct. *See e.g., Iorio v. Allianz Life Ins. Co. of N. Am.*, 2008 U.S. Dist. LEXIS 118344, 13-14 (S.D. Cal. July 8, 2008) (holding that Fed. R. Evid. 408(a)(1) precludes evidence of defendant's prior agreement with the California Department of Insurance where plaintiffs offered the document for the purpose of proving liability); *United States v. Gilbert*, 668 F.2d 94, 97 (2d Cir. 1981) (holding that civil consent decrees are governed by Fed. R. Evid. 408, which "bars evidence of a compromise to prove liability for the claim."); *Bowers v. NCAA*, 563 F. Supp. 2d 508, 536 (D.N.J. 2008) (holding that Fed. R. Evid. 408's exclusionary provision applies to civil consent decrees between private parties and government agencies and precludes plaintiff from using consent decree as evidence of defendant's liability). Moreover, multiple courts have granted Abercrombie's motions to exclude evidence regarding this consent decree in previous cases on the grounds that the consent decree is irrelevant and admission of evidence regarding the consent decree would be unduly prejudicial to Abercrombie and violate Section

IX.A of the Consent Decree, which specifically provides that it "shall not be deemed to be a finding or determination by the Court, nor an admission by any party, regarding the merits, validity or accuracy of any of the allegations, claims or defenses" and that the decree "shall not be discoverable, admissible or used as evidence of liability or non-liability for unlawful discrimination in any proceeding." *See E.E.O.C. v. Abercrombie & Fitch Stores, Inc., et al.*, No. 4:08-1470 (E.D. Mo. filed Sept. 25, 2008) (Dock. Nos. 67, 68); *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, No. 4:09-cv-00602-GKF-FHM (N.D. Ok. Filed Sept. 16, 2009) (Dock. No. 125). *See also Kramas v. Security Gas & Oil, Inc.*, 672 F.2d 766, 772 (9th Cir. 1982) (affirming district court's refusal to admit evidence of a consent decree entered in a prior SEC enforcement proceeding); *Allen v. City of L.A.*, 2012 U.S. Dist. LEXIS 65775, 5-6 (C.D. Cal. May 7, 2012) (court excluding evidence relating to prior consent decree as unduly prejudicial pursuant to Fed. R. Evid. 403). Finally, Hallman's citation to and reliance upon allegations contained in the prior complaint does not constitute competent evidence that may be considered under F.R.C.P 56(e). *See e.g., Rosales v. Career Sys. Dev. Corp.*, 2009 U.S. Dist. LEXIS 101808, 17-18 (E.D. Cal. Nov. 1, 2009) (holding that facts alleged in complaint from a different lawsuit "do not constitute competent evidence for purposes of summary judgment" and excluding such evidence for the purpose of defendant's motion for summary judgment).

Third, many of Hallman's allegations are based on hearsay statements or unauthenticated documents. (*See* SMF 1-2, 18-19, 22, 26, 31, 33, 35-37, 40-42, 47; Response to SUF 60-61, 72-73, 75-79, 84, 90, 112.) Such evidence cannot be considered in deciding Defendants' motion for summary judgment. Fed. R. Evid. 801, 802, 901; *Jim v. County of Hawaii*, 33 F.App'x 857, 858 (9th Cir. 2002) (trial court properly refused to consider hearsay in ruling on motion for summary judgment); *Frederick v. City of Portland*, No. 95-35389, 1996 U.S. App. LEXIS 26700, at *7 (9th Cir. Oct. 10, 1996) ("When ruling on a motion for summary

judgment, the court should not consider hearsay statements"); *Alcala v. Best Buy Stores, LP*, No. EDCV-11-00798, 2012 U.S. Dist. LEXIS 181892, at *30 (C.D. Cal. Nov. 7, 2012) (court does not consider inadmissible hearsay on a motion for summary judgment); *Cristobal v. Siegel*, 26 F.3d 1488, 1494 (9th Cir. 1994) ("This court has consistently held that documents which have not had a proper foundation laid to authenticate them cannot support a motion for summary judgment"); *L.A. Printex Indus. v. Lia Lee, Inc.*, No. CV08-1836, 2009 U.S. Dist. LEXIS 28477, at *7 (C.D. Cal. Mar. 23, 2009) ("It is well-established that unauthenticated documents cannot be considered in a motion for summary judgment").

Fourth, some of Hallman's allegations are based on the allegations in her complaint. (SMF 17, 25, 27, 40; Response to SUF 10, 73, 75-78, 84, 94-95, 98-101.) Such allegations are inadmissible evidence that Hallman cannot rely on to defeat Defendants' motion for summary judgment. *John M. Floyd & Assocs. v. TAPCO Credit Union*, No. 12-35307, 2013 U.S. App. LEXIS 17513, at *2 (9th Cir. Aug. 21, 2013) ("[A plaintiff] may not rely on the unverified allegations in its complaint to defeat summary judgment"); *Githere v. Consol. Amusement Corp.*, 258 F.App'x 122, 124 (9th Cir. 2007) (allegations in complaint are insufficient to defeat a motion for summary judgment).

Fifth, for several statements of fact, Hallman asserts they are in dispute, but does not cite any evidence that supports her position. (*See* Response to SUF 2-4, 18-19, 21-27, 34-37, 39, 49-50, 54-62, 64-69, 72-73, 75-82, 84, 90, 94-95, 98-101, 106-108, 110-112, 119, 124.) Instead, Hallman just refers the court to her SMF, bases her dispute on impermissible argument not supported by any evidence, or cites to evidence that does not support her contention. (*Id.*) In reality, there is no evidence that places these undisputed facts in dispute. Thus, Hallman's unsupported arguments and contentions must be disregarded in determining whether these facts are in dispute and deciding Defendants' motion for summary judgment. (Scheduling and Case Management Order (Doc. 25) at 5-6, 7.)

Finally, for other statements, Hallman relies on evidence that is irrelevant to her claims. For example, Hallman disputes a number of facts related to the complaint she made to Defendants about meal and rest breaks, but these facts are irrelevant because Hallman's complaint to Defendants does not constitute protected activity and cannot support her retaliation for engaging in protected activity claim under California Labor Code § 1102.5. (*See* SMF 5-8, 49-50; Response to SUF 29-30, 32.) Likewise, Hallman disputes a number of facts related to her FMLA retaliation claim on the ground that Sedgwick denied her short-term disability claim in late October 2011, but Sedgwick's handling of her short-term disability claim has no bearing on whether Abercrombie was lawfully permitted to terminate Hallman after she failed to return to work after taking more than twelve weeks of leave. (*See* SMF 38-43; Response to SUF 90.) These irrelevant facts Hallman cites must also be disregarded in deciding Defendants' motion.

### B. The Material Facts Related To Hallman's Race Discrimination And Harassment Claims Are Not In Dispute.

Defendants' statement of undisputed facts establishes that Hallman's discrimination and harassment claims are based on solely on five isolated instances of conduct. (SUF at 36.) Although Hallman claims this fact is disputed, her position is not based on a citation to any evidence; rather it is based solely on her reference to her SMF. (Response to SUF at 36.) Moreover, a review of Hallman's SMF reveals that the only alleged instances of discrimination and harassment she has identified that are supported by admissible evidence are the same instances of conduct discussed by Defendants. (*See* SMF at 15, 44 (alleging Charles commented that Abercrombie wanted to recruit African-American women with "curly hair"), SMF at 17 (alleging Charles criticized Hallman for improperly folded clothes), SMF at 19-20, 46 (alleging Charles disciplined Hallman for having a hostile conversation with another manager), SMF at 30, 32 (alleging changes

were made to her work schedule), Opp. at 8 (alleging Charles asked Hallman to return her keys to the store).)

Hallman cites no other admissible evidence that can support her race discrimination and harassment claims.  For example, Hallman's attempt to rely on allegations from a complaint in a prior lawsuit and a consent decree that Abercrombie entered into, (SMF 9-14), is improper as such evidence is inadmissible and cannot be considered in deciding Defendants' motion for summary judgment. (*See supra* Section II.A.)  Likewise, Hallman's attempt to rely on several inadmissible hearsay statements regarding what others allegedly told her about statements Charles had allegedly made to them,  (SMF at 18, 26, 31, 35-36, 47), is also improper as such evidence is inadmissible and cannot be considered in ruling on Defendants' motion for summary judgment.[2] (*See supra* Section II.A.)

### C. The Material Facts Related To Hallman's Retaliation For Complaining About Discrimination And Harassment Claim Are Not In Dispute.

Hallman's opposition also confirms that the first time Defendants learned that she believed she was being subject to racial discrimination or harassment was on September 7, 2011 while reviewing her request for leave.  (*See* SUF 94.) Although Hallman claims this fact is disputed because she mentioned to Watumull two days before she went on leave that she felt she was being harassed, the evidence she cites confirms that she never informed Watumull, or any of the Defendants, that she felt she was being subjected to racial discrimination or racial harassment.  (Response to SUF 94.)  The undisputed evidence establishes that the first and only complaint about race discrimination or race harassment that Hallman

---

[2] Moreover, even if these statements could be considered, they do not support Hallman's claims. Hallman alleges only that others told her that Charles told them that she was watching Hallman and was looking to terminate her. (SMF at 18, 26, 31, 35, 47.)  Hallman has not put forth any evidence that Charles ever said anything about Hallman's race or that any of Charles' alleged statements were motivated by Hallman's race.  Thus, these allegations do not support Hallman's claim that Charles was discriminating against her or harassing her because of her race.

made was in her leave paperwork. (*See* SUF 94-104.)

Hallman also cites no evidence establishing that Defendants retaliated against her upon learning of her complaint. The undisputed evidence establishes that Abercrombie immediately investigated Hallman's complaint and ultimately closed the investigation because Hallman refused to speak with Abercrombie. (SUF 105-108.) Hallman was ultimately terminated for failing to return from leave after receiving her full entitlement to leave under the FMLA. (SUF 110.) Her termination had nothing to do with the complaint she made, and Hallman has put forth no evidence that it did. (*Id.*)

Moreover, Hallman also concedes that Charles could not have retaliated against her for making complaints about racial discrimination or harassment because Charles did not learn that Hallman had made such a complaint until she went on leave and Charles had no interactions or communications with her after Charles learned that she had made a complaint. (Response to SUF 96-97.)

### D. The Material Facts Related To Hallman's Leave And Termination Are Not In Dispute.

Hallman concedes the following facts: (1) Hallman was aware of Abercrombie's leave policy and that the policy provides that employees are entitled to take up to twelve weeks of leave under the FMLA, but that if they fail to return at the expiration of that time, they may be terminated (Response to SUF 7, 86-88); (2) Hallman went on leave on August 1, 2011 (SMF 33-34; Response to SUF at 83, 85); (3) Hallman was informed on September 2, 2011 that she had a right to take up to twelve weeks of leave – until October 23, 2011 (Response to SUF at 89); (4) Hallman was informed on November 7, 2011 stating that she had been required to return to work as of October 24, 2011 and that if she did not return to work by November 14, 2011, she would be terminated as of that date (*id.* at 92-93); and (5) Hallman did not return to work by November 14, 2011, and was unable to return to work by that date (*id.* at 91, 109). These concessions confirm

Abercrombie's position that she was properly terminated for failing to return for work after receiving twelve weeks of leave.  And, as set forth below, these concessions are fatal to each of Hallman's claims that are based on her contention that she was terminated for an unlawful reason, including her race discrimination, retaliation for reporting harassment and discrimination, wrongful termination in violation of public policy, retaliation in violation of FMLA, and retaliation for engaging in protected activity claims.

Because these material facts are not in dispute, Hallman devotes a section of her brief to discussing Sedgwick's handling of Hallman's request for short-term disability benefits.  (*See* SMF at 39-42.)  These allegations, however, have absolutely no bearing on Hallman's FMLA leave or the lawfulness of Defendants' decision to terminate Hallman after she failed to return to work after receiving her full entitlement to leave under the FMLA.  Under the FMLA, an employee can be lawfully terminated if she fails to return to work after receiving twelve weeks of leave or if she is unable to return to work after receiving twelve weeks of leave. 29 U.S.C. § 2612(a); 29 C.F.R. § 825.200(a); *Fiatoa v. Keala*, 191 F.App'x 551, 553 (9th Cir. 2006); *Maharaj v. California Bank & Trust*, No. 2:11-cv-00315, 2012 U.S. Dist. LEXIS 163684, at *23 (E.D. Cal. Nov. 15, 2012); *Jackson v. Simon Property Group, Inc.*, 795 F.Supp.2d 949, 964-65 (N.D. Cal. 2011); *Shaaban v. Covenant Aviation Sec.*, No. CV 08-03339, 2009 U.S. Dist. LEXIS 104996 (N.D. Cal. Nov. 10, 2009).  An employee's short-term disability claim has no impact on whether an employee can be properly terminated under the FMLA.  Thus, these allegations are not material to Defendants' motion for summary judgment and should be ignored as irrelevant.[3]

---

[3] Moreover, Hallman's discussion of the events related to her short-term disability is also highly inaccurate and not supported by evidence. (*See* Defendants' Response to SMF; Defendants' Objections to Evidence.)  The evidence shows that Sedgwick required Hallman to appear for an independent medical examination so it could determine whether she was entitled to short-term disability benefits, but that Hallman failed to show up for the scheduled examination. (Hallman

### E. The Material Facts Related To Hallman's Retaliation For Engaging In Protected Activity Claim Are Not In Dispute.

Hallman spends a great deal of time discussing her alleged complaints to Defendants about meal and rest breaks, but these allegations are irrelevant. To prevail on her retaliation for engaging in protected activity claim, Hallman must establish that she was retaliated against for making a complaint to the government or law enforcement or that she was retaliated against for refusing to engage in the practice of not taking breaks. (*See* Mot. at 23-24.) Hallman cites no facts that would support such a claim as she cites no instances where she complained to the government or law enforcement or where she was told not to take a break and she refused to do so. Instead, Hallman bases her claim solely on her contention that Defendants retaliated against her after she complained *to Defendants* about meal and rest breaks. (*See* SMF at 5-8; Response to SUF 29-30, 32-33.) These allegations, even if true, cannot support Hallman's retaliation for engaging in protected activity claim. Thus, Hallman's discussion about the alleged complaints she made to Defendants about meal and rest breaks is irrelevant to Defendants' motion for summary judgment.

Moreover, Hallman's characterization of the evidence to suggest that she was written up in retaliation for complaining about not receiving breaks is simply untrue. (*See* SMF at 5-8; Response to SUF 29-30, 32-33.) The undisputed evidence shows that Hallman was written up in October 2010 for failing to take proper breaks.[4] (SUF 29.) Then, *after she was written up*, she contacted HR to complain that she was not receiving breaks. (SUF at 30.) There is no evidence supporting Hallman's allegation that she was written up after she complained about

---

Dep. at 211.) Hallman's short-term disability claim was ultimately denied in late October 2011 because there was no objective medical evidence supporting her claim. (*Id.* at 208.)

[4] Hallman's assertion that Defendants have denied that Hallman complained about not being allowed to take meal and rest breaks (SMF 7) is simply false. Defendants' SUF clearly state that Hallman contacted HR to complain about breaks after she was written up and that HR subsequently contacted her DM, Shamika Marsh, to investigate the complaint. (SUF 30-31.)

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

1    meal and rest breaks. Thus, Hallman's allegation must be disregarded.[5]

2    ## III.   LAW AND ARGUMENT

3    ### A. Hallman's Race Discrimination Claim Fails As A Matter Of Law.

4    #### 1.  There Is No Direct Evidence Of Discrimination.

5    Hallman argues that Defendants are not entitled to summary judgment on
6    her race discrimination claim because she has offered direct evidence of
7    discrimination. (Opp. at 10.) Hallman is wrong.

8    First, the 11 paragraphs Hallman cites in support of her argument are replete
9    with allegations that are not supported by the evidence and that are inadmissible
10   and cannot be considered in deciding Defendants' motion. (*See* Opp. at 10-14, ¶ 1
11   (relies on unauthenticated document), ¶ 4 (statements by Noah are hearsay), ¶ 5
12   (Hallman's note to Noah has not been authenticated), ¶ 6 (hearsay), ¶ 9 (what other
13   store manager told Hallman is hearsay), ¶ 10 (what other managers told Hallman is
14   hearsay), ¶ 11 (allegations in prior complaint and consent decree inadmissible); *see*
15   *also* Defendants' Response to Plaintiff's Statement of Material Facts; Defendants'
16   Objections to Evidence.) These inadmissible allegations must be disregarded in
17   deciding Defendants' motion for summary judgment.

18   Second, Hallman's allegations are not direct evidence of discrimination.
19   "Direct evidence is evidence 'which, if believed, proves the fact [of discriminatory
20   animus] without inference or presumption." *Peters v. Shamrock Foods Co.*, 262
21   F.App'x 30, 32 (9th Cir. 2007). "Direct evidence typically consists of clearly
22   sexist, racist, or similarly discriminatory statements or actions" by the person who
23   the plaintiff claims discriminated against her. *Id.* A statement or action that
24   requires an inference that it was discriminatory is not direct evidence. *Id. See also*
25   *Dimitrov v. Seattle Times Co.*, No. 98-36156, 2000 U.S. App. LEXIS 22402, at *4

26
27
28   _____

[5] Hallman also attempts to rely on a prior litigation and class action settlement alleging Defendants failed to provide meal and rest breaks. (*See* SMF 3.) As set forth above, this evidence is inadmissible and irrelevant. (*See supra* Section II.A.)

(9th Cir. Aug. 29, 2000) (mimicking and staring at plaintiff was not direct evidence of discrimination); *Ang v. Dalton*, No. 99-55151, 2000 U.S. App. LEXIS 20209, at *5-6 (9th Cir. Aug. 10, 2000) (comments related to plaintiff's pregnancy were not direct evidence of discrimination because they required an inference to conclude they were indicia of gender or pregnancy discrimination); *Alcala*, 2012 U.S. Dist. LEXIS 18192, at *17-18 (plaintiff's claim that supervisor acted hostile toward him after he requested a disability accommodation and that it was known among employees that defendant disapproved of sick-related absences was not direct evidence of discrimination).[6]

Here, Hallman has not identified any "clearly" racist statement or action. Indeed, the only alleged discriminatory statements Hallman asserts Charles made was that "yeah, we're looking for people who have curly hair," that Hallman had a "little black cloud over her,"[7] and that Hallman "put him [Noah] on blast." (*Id.* at 11, ¶¶ 3, 5.) The only discriminatory action Hallman claims Charles engage in was allegedly waving her hand around and shaking her neck during a conversation with Hallman, which Hallman interpreted as "depicting the movements of a stereotyped black female." (*Id.* at 11, ¶ 5.) As Hallman admits, these alleged statements and actions were not "clearly racist" and can be considered discriminatory only if one infers that they were an attempt by Charles to depict a "stereotypical black female." Thus, none of these allegations are direct evidence of discrimination because each of them requires that a presumption or inference be made for the

---

[6] Hallman also states that an employer's discriminatory treatment of other employees who were members of a protected class may create an inference of discriminatory intent toward plaintiff, (Opp. at 14), but Hallman has not submitted any evidence of discriminatory treatment of other African-American employees.

[7] Hallman's suggestion that this statement was somehow discriminatory is, at best, disingenuous. Hallman testified that when Charles was telling Hallman what she needed to do to improve the store, Charles said the store was gloomy and referenced the character Eeyore from Winnie the Pooh to make the analogy that the store had had a "little black cloud" over it. (Hallman Dep. at 80-81.) Hallman was unable to identify anything about this alleged statement that was discriminatory. (*Id.* at 81.)

1    comment to be considered racist.[8]  *Peters*, 262 F.App'x at 32; *Dimitrov*, 2000 U.S.

2    App. LEXIS 22402, at *4; *Ang*, 2000 U.S. App. LEXIS 20209, at *5-6; *Alcala*,

3    2012 U.S. Dist. LEXIS 18192, at *17-18.

4            Finally, even if these allegations could be construed as racist statements or

5    actions, they still are not direct evidence of discrimination because they have no

6    relation to the adverse employment action Hallman suffered – her termination.

7    Each of the allegations cited by Hallman relates to conduct that Charles allegedly

8    engaged in.    Charles, however, was not involved in the decision to terminate

9    Hallman. (SUF 112[9].) Thus, Charles' alleged discriminatory conduct (assuming it

10   can be construed as such) is not linked to Hallman's adverse employment action.

11   Accordingly, Charles' conduct cannot be considered direct evidence of

12   discrimination. *See Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 919 (9th Cir.

13   1996) (holding that a comment that is not directly tied to an adverse action is not

14   direct evidence of discrimination); *Nesbit v. Pepsico, Inc.*, 994 F.2d 703, 705 (9th

15   Cir. 1993) (holding that the comment "[w]e don't necessarily like grey hair" had

16   been "uttered in an ambivalent manner and was not tied directly to [plaintiff's]

17   termination"); *Liu v. Colvin*, No. 11-cv-6120, 2013 U.S. Dist. LEXIS 57423, at

18   *21-22 (N.D. Cal. April 22, 2013) (supervisor's alleged discriminatory statement

19   was not direct evidence of discrimination where supervisor did not make decision

20   to terminate plaintiff); *Davis v. Vitamin World, Inc.*, No. CV-11-00367, 2011 U.S.

21   Dist. LEXIS 134723, at *18 (C.D. Cal. Nov. 21, 2011) (claim that supervisor

22   harbored discriminatory animus did not create triable issue because supervisor did

23   not make termination decision).

---

24

25   [8]  Hallman's other allegations are also not direct evidence of discrimination.  These allegations
     relate to Charles writing Hallman up (*id.* at 11, ¶ 5; 12, ¶ 8), Watumull not returning Hallman's

26   alleged phone call (*id.* at 12, ¶ 7), and Hallman's work schedule being changed (*id.* at 12-13, ¶

27   9.)  None of this conduct can be considered clearly racist without an inference or presumption
     that they were taken based on Hallman's race.

28   [9]  As explained in Defendants' Objections to Evidence, although Hallman asserts this fact is
     disputed, she has cited no admissible evidence that places this fact in dispute.

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

### 2. Hallman Cannot Maintain A Race Discrimination Claim Under The *McDonnell Douglas* Framework.

#### a. Hallman Cannot Establish A *Prima Facie* Case.

Hallman concedes that to establish a *prima facie* case, she must prove that circumstances suggest a discriminatory motive for her adverse employment action. (Opp. at 15.) Here, the evidence shows that Hallman was terminated solely because she failed to return from FMLA leave after receiving more than twelve weeks of leave. (SUF 110.) Thus, Defendants are entitled to summary judgment. *See Wu v. Boeing Co.*, No. SACV-11-1039, 2012 U.S. Dist. LEXIS 119233, at *12-18 (C.D. Cal. Aug. 22, 2012) (summary judgment where no evidence of discriminatory motive); *Ramirez v. County of Marin*, No. C-10-02889, 2011 U.S. Dist. LEXIS 123363, at *12-14 (N.D. Cal. Oct. 25, 2011) (same); *Krieg v. U.S. Foodservice, Inc.*, No. C 10-02491, 2011 U.S. Dist. LEXIS 103926, at *7-10 (N.D. Cal. Sept. 14, 2011) (same).

Hallman lists a number of unsupported and inadmissible allegations in support of her argument that there was a discriminatory motive for her termination. (Opp. at 15.)  These allegations must be ignored because there is simply no admissible evidence establishing that Hallman was "treated differently and held to more stringent standards than non-African American employees," that Charles told other managers she was "watching her like a hawk" or that Charles "wanted to get rid of her," that Charles "changed Plaintiff's work schedule without notice and just a couple of hours before her shift was set to begin," or that Charles "spoke to [Hallman] in a hostile and discriminatory manner that she did not speak to non-African-Americans."   (*See* Defendants' Objections to Evidence; Defendants' Response to Plaintiff's SMF.)

Moreover, even if these allegations were supported by admissible evidence, they still do not establish a discriminatory motive for Hallman's termination because they all relate to Charles' conduct and Charles was not involved in the

---

decision to terminate Hallman.  *See Nidds*, 113 F.3d at 919; *Nesbit*, 994 F.2d at 705; *Liu*, 2013 U.S. Dist. LEXIS 57423, at *21-22; *Davis*, 2011 U.S. Dist. LEXIS 134723, at *18.

### b. Hallman Cannot Show Pretext.

Hallman also concedes that even if she is found to have made a *prima facie* showing, she still must prove that Defendants' legitimate, non-discriminatory reason for her termination – her failure to return from leave – is pretextual.  (Opp. at 16.)  Hallman has not, and cannot, do so.

As Hallman acknowledges, this Court has already held that termination of an employee for failing to return from leave constitutes a legitimate, nondiscriminatory reason and is not pretextual.  *Hooker v. Parker-Hannifin Corp.*, No. SACV-11-483, 2012 U.S. Dist. LEXIS 49144, at *7 (C.D. Cal. April 3, 2012). Hallman's attempt to distinguish *Hooker* on the ground that the employer in *Hooker* kept the employee informed of his status is unsuccessful.  Like the plaintiff in *Hooker*, Hallman was aware of Abercrombie's policy that expressly provided Hallman was entitled to twelve weeks of leave under the FMLA and that she could be terminated if she failed to return to work after exhausting her leave.  (SUF 86-88.)  Hallman received further notice while she was on leave that she was entitled to only twelve weeks of leave under the FMLA.  (SUF 89.)  Hallman was further informed when her leave entitlement expired and was offered an opportunity to return to work.  (SUF 92.)  Hallman was advised that if she did not return to work, she would be terminated.  (SUF 93.)  She did not and she was terminated.  (SUF 109-110.)  Thus, this case is on all fours with *Hooker*, and Defendants are entitled to summary judgment.  *See Hooker*, 2012 U.S. Dist. LEXIS 49144, at *6-9.

Hallman next argues that Sedgwick's denial of her short-term disability claim in late October 2011 shows Defendants' reason for terminating her is pretextual.  (*See* Opp. at 16-17.)  Sedgwick's handling of Hallman's short-term disability claim, however, has no relevance to her FMLA leave or Defendants'

reason for terminating her. Under the FMLA, an employee can lawfully be terminated if she fails to return to work after receiving twelve weeks of leave or if she is unable to return to work after receiving twelve weeks of leave. 29 U.S.C. § 2612(a); 29 C.F.R. § 825.200(a); *Fiatoa*, 191 F.App'x at 553; *Maharaj*, 2012 U.S. Dist. LEXIS 163684, at *23; *Jackson*, 795 F.Supp.2d at 964-65; *Shaaban*, 2009 U.S. Dist. LEXIS 104996. Whether the employee's short-term disability claim is approved or denied has no bearing on whether she can be lawfully terminated under the FMLA. Thus, Sedgwick's handling of Hallman's short-term disability claim does not show the decision to terminate her was pretextual.

Hallman's next argument that Defendants' conduct towards Hallman prior to her going on leave establishes pretext, (Opp. at 17), is also incorrect. Hallman's subjective belief that Charles was treating her unfairly is insufficient to establish pretext. *Davis*, 2011 U.S. Dist. LEXIS 134723, at *18 (speculative assertions that plaintiff was terminated for discriminatory reasons insufficient to establish a discrimination claim); *Ramirez*, 2011 U.S. Dist. LEXIS 123363, at *14 (plaintiff unable to prove race discrimination where he cited to no evidence showing discriminatory motive for termination). Moreover, even if Charles' alleged conduct is considered, it does not establish pretext because Charles was not involved in the decision to terminate Hallman. *See Nidds*, 113 F.3d at 919; *Nesbit*, 994 F.2d at 705; *Liu*, 2013 U.S. Dist. LEXIS 57423, at *21-22; *Davis*, 2011 U.S. Dist. LEXIS 134723, at *18.

Hallman's next argument that she complained to Defendants about meal and rest breaks, (Opp. at 17), also does not establish pretext. In fact, Hallman's claim that she was terminated for complaining to Defendants about meal and rest breaks supports Defendants' position that she was <u>not</u> terminated because of her race.

Last, Hallman's argument that other managers told her that Charles wanted to terminate her employment, (Opp. at 17), cannot establish pretext. Such evidence is inadmissible hearsay that cannot be considered in deciding Defendants'

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

1   motion for summary judgment.  Fed. R. Evid. 801, 802; *Jim*, 33 F.App'x at 858;

2   *Frederick*, 1996 U.S. App. LEXIS 26700, at *7; *Alcala*, 2012 U.S. Dist. LEXIS

3   181892, at *30.  Moreover, even if this evidence could be considered, it does not

4   establish pretext because Charles was not involved in the decision to terminate

5   Hallman.[10]  *See Nidds*, 113 F.3d at 919; *Nesbit*, 994 F.2d at 705; *Liu*, 2013 U.S.

6   Dist. LEXIS 57423, at *21-22; *Davis*, 2011 U.S. Dist. LEXIS 134723, at *18.

### B. Hallman's Race Harassment Claim Fails As A Matter Of Law.

8       Hallman concedes that to maintain a race harassment claim, she must prove

9   that she was subjected to severe and pervasive racial harassment.  (Opp. at 18.)

10  Hallman has not met her burden.  Hallman identifies only six allegations (none of

11  which are supported by citations to evidence) that she claims support her claim: (1)

12  Charles' alleged comment that Abercrombie wanted to recruit African-American

13  women with curly hair; (2) Charles allegedly speaking to Hallman in a demeaning

14  and condescending manner; (3) an instance where Charles told Hallman she put a

15  co-worker "on blast" and waived and her hand and shook her neck; (4) Charles

16  writing up Hallman; (5) inadmissible hearsay statements that other managers

17  allegedly told Hallman that Charles told them she was watching Hallman like a

18  hawk and wanted to terminate Hallman's employment; and (6) Charles "spoke to

19  Hallman in a disrespectful, harsh and demeaning manner, but spoke to non-African

20  Americans in a professional and courteous manner."[11]  (Opp. at 18-19.)  These

21  alleged facts are insufficient as a matter of law to support a race harassment claim.

22      First, Hallman does not dispute that she must establish that the alleged

23  harassing conduct she complains of was racially motivated.  (*See* Mot. at 14; Opp.

24  at 18.)  Hallman has not put forth any admissible evidence that Charles' alleged

25  harassing actions were motivated by Hallman's race.  (*See* Opp. at 18-19.)  Thus,

---

[10] The allegation also does not support Hallman's argument because there is no evidence that Charles wanted to terminate Hallman because of her race.

[11] This allegation is not supported by any evidence.

her claim fails. *Peralta v. City and County of San Francisco*, 427 F.App'x 616, 617 (9th Cir. 2011) (harassment claim failed because no evidence that the complained of conduct by supervisor was "on the basis of [his] race or national origin"); *Abram v. City & County of San Francisco Dep't of Pub. Health*, 357 F.App'x 142, 144 (9th Cir. 2009) (no *prima facie* showing where no particularized facts established that the conduct was of a racial nature); *Delaney v. Lynwood Unified Sch. Dist.*, No. CV-07-05049, 2009 U.S. Dist. LEXIS 69426, at *7 (C.D. Cal. Aug. 6, 2009) (speculation that motivation for actions was ageist, without any evidence, was insufficient to preclude summary judgment).

Second, Hallman concedes that to be actionable, the alleged harassment must be severe (such as epithets, slurs, physical harassment, or assault) and must have occurred on a consistent basis. (Opp. at 18.) None of the conduct Hallman complains of rises to the level of "severe" harassment. *See Granillo v. Exide Techs., Inc.*, No. CV-10-1080, 2011 U.S. Dist. LEXIS 130669, at *59 (C.D. Cal. May 20, 2011); *Meraz v. Jo-Ann Stores, Inc.*, No. CV-03-2914, 2004 U.S. Dist. LEXIS 7533, at *56 (C.D. Cal. April 2, 2004). Moreover, even if Charles' two alleged comments of wanting to hire African-American women with curly hair and that Hallman put a co-worker "on blast" and her alleged conduct of waving her hand and shaking her neck are construed as severe racially harassing conduct, these actions insufficient as a matter of law to establish a harassment claim. *Stevens v. County of San Mateo*, 267 F.App'x 684, 686 (9th Cir. 2008) (summary judgment because isolated and sporadic slurs were insufficient to establish harassment); *Day v. Sears Holdings Corp.*, No. CV-11-09068, 2013 U.S. Dist. LEXIS 41052, at *79-80 (C.D. Cal. Mar. 13, 2013) ("a single isolated remark is not 'so pervasive as to alter the conditions of the [employee's] employment and create and abusive working environment'"); *Johnson v. Cty. of Yolo*, No. 2:12-cv-00812, 2013 U.S. Dist. LEXIS 24955, at *15-16 (E.D. Cal. Feb. 22, 2013) (supervisor calling Hispanic employee "dark one" and "gravy" did not constitute racial harassment).

Furthermore, even if all of the instances on which Hallman relies are considered, she still cannot maintain a harassment action because the few isolated instances of alleged harassment do not amount to a pervasive abusive environment that would support a harassment claim. *See Hooker*, 2012 U.S. Dist. LEXIS 49144, at *10-11 (supervisor's comment that a character on slide show with shaded skin looked like plaintiff, multiple reprimands to plaintiff, and regularly questioning plaintiff about his restroom use was insufficient to constitute harassment). *See also Day*, 2013 U.S. Dist. LEXIS 41052, at *127-28 (collecting cases and granting summary judgment on harassment claim because few instances of harassment were insufficient as a matter of law to establish harassment).

Finally, Hallman does not dispute that conduct related to the management of the store cannot support her harassment claim. (*See* Mot. at 13; Opp. at 18.) Hallman also does not dispute that each of the instances of conduct she complained of involved Charles' performance of her DM duties. (*See* Mot. at 13-14; Opp. at 18.) Her claim fails for this reason as well. *See Surrell v. California Water Serv. Co.*, 518 F.3d 1097, 1108-09 (9th Cir. 2008) (summary judgment where conduct complained of was performance related); *Meraz*, 2004 U.S. Dist. LEXIS 7533, at *56 (summary judgment where conduct complained of involved personnel management actions).[12]

### C. Hallman's Retaliation For Reporting Harassment And Discrimination Claim Fails As A Matter Of Law.

Hallman does not dispute the law cited by Defendants – namely that she must prove a prima facie case of retaliation and that Defendants' legitimate, non-discriminatory reason is pretext. (*See* Mot. at 17-18; Opp. at 19-20.) Hallman cannot meet this burden.

---

[12] As explained in Defendants' motion for summary judgment, Abercrombie has an affirmative defense to Hallman's harassment claim. (Mot. at 16-17.) Hallman provides no response to this argument. (*See* Opp. at 18-19.) Thus, her claim fails for this reason as well.

Defendants were made aware on September 7, 2011 that Hallman stated in her leave paperwork that she was claiming "depression due to feeling targeted at work because of her race."[13]   There is no evidence, however, that Defendants retaliated against her because of her complaint.  To the contrary, HR immediately investigated Hallman's assertion.  (SUF 105-107.)   The investigation was ultimately closed because Hallman refused to speak with Abercrombie.  (SUF 108.)  After she made her complaint, Defendants afforded Hallman her full amount of leave entitlement under the FMLA and even offered her a chance to return to work after her leave entitlement had expired.  (SUF 92-93.)  Hallman, however, refused to return to work.  (SUF 109.)  She was ultimately terminated months after she made her complaint solely for failing to return to work after exhausting her leave.  (SUF 110.)   The decision to terminate her had nothing to do with the complaint she made in her leave paperwork, and she has put forth no evidence that it did.  (SUF 110.)  Accordingly, Hallman cannot carry her burden of establishing she was terminated for complaining about discrimination or harassment.  *See Negley v. Judicial Council of California*, 458 F.App'x 682, 685 (9th Cir. 2011) (summary judgment where no evidence plaintiff was terminated in retaliation for filing an internal complaint or lawsuit); *Arevalo v. Hyatt Corp.*, No. CV-12-7054,

---

[13] Hallman's assertion that she "made multiple complaints to high level management such as Megan Watumull and other store managers concerning her belief that she was being unfairly treated, harassed and discriminated against by Defendant Charles" is not supported by any evidence.  The evidence cited by Hallman merely states that she spoke to other managers about "personal" things during her employment.  (*Id.*)  This undisputed evidence shows that Hallman never informed her DMs, her RM, or HR that she was being subjected to racial discrimination or harassment.  (SUF 94-105.)  Her alleged general complaint to Watumull that things were difficult at work and she thought she was being harassed, which never mentioned her race, cannot serve as the basis for her retaliation claim.  *Day*, 2013 U.S. Dist. LEXIS 41052, at *71 ("Absent evidence that [plaintiff] complained of discriminatory treatment *based on gender*, her statements were not 'protected activity'"); *Villasenor v. Sears, Roebuck & Co.*, No. CV-09-9147, 2011 U.S. Dist. LEXIS 4301, at *9-10 (C.D. Cal. Jan. 18, 2011) (plaintiff's repeated complaints that he was being treated unfairly but that never mentioned an issue of age did not constitute protected activity); *Kaplan v. Dr. Reddy's Labs., Inc.*, No. CV-10-00675, 2010 U.S. Dist. LEXIS 104330, at *1 (C.D. Cal. Sept. 30, 2010) (plaintiff's email that she was being treated unfairly and harshly was not protected conduct).

2013 U.S. Dist. LEXIS 68568, at *45-46 (C.D. Cal. May 13, 2013) (summary judgment where not sufficient evidence establishing causal link); *Villasenor*, 2011 U.S. Dist. LEXIS 4301, at *12 (summary judgment where no documents or testimony establishing termination was motivated by retaliatory purposes).

### D. Hallman's Failure To Prevent Discrimination And Harassment Claim Fails As A Matter Of Law.

Hallman does not dispute that she cannot maintain a failure to prevent claim if she is unable to prove she actually suffered any underlying discrimination, harassment, or retaliation. (*See* Mot. at 20; Opp. at 20-21.) Hallman has failed to establish she suffered any discrimination, harassment, or retaliation.   Thus, Hallman's claim fails as a matter of law. *Day*, 2013 U.S. Dist. LEXIS 41052, at *121; *Alcala*, 2012 U.S. Dist. LEXIS 181892, at *38.

Hallman also does not dispute that she cannot maintain a failure to prevent claim if she did not complain to her employer such that her employer had an opportunity to prevent the alleged discrimination or harassment. (*See* Mot. at 20; Opp. at 20-21.) The only complaint Hallman asserts she made to Abercrombie was when she told Watumull two days before she went on leave that she was experiencing unfair treatment and harassing conduct at work.  (Opp. at 20-21.) But, Hallman does not contend that she ever informed Watumull that she was being discriminated against or that she was being subject to racial harassment. (*Id.* *See also* SUF at 98-99.)  Thus, Hallman's generic comments to Watumull shortly before she went on leave did not give Abercrombie the opportunity to prevent any alleged race discrimination or race harassment of Hallman.  Indeed, the first time Abercrombie learned that Hallman believed she was being subjected to race discrimination or race harassment was after she went on leave, and by that time Abercrombie was unable to take any action to prevent alleged discrimination or harassment because Hallman refused to speak with Abercrombie and she never returned to work.  (SUF 96, 104-105, 107, 109.)  Hallman's claim fails for this

reason as well.  *Thompson v. City of Monrovia*, 186 Cal. App. 4th 860, 880 (Cal. App. 2d Dist. 2010).

### E. Hallman's Wrongful Termination In Violation Of Public Policy Claim Fails As A Matter Of Law.

Hallman concedes that her wrongful termination in violation of public policy claim is derivative of her race discrimination and retaliation claims.  (Opp. at 21.) Hallman also does not dispute that if her underlying claims fail, her wrongful termination claim also fails.  (*See* Mot. at 20-21; Opp. 21-22.)  As set forth herein, Hallman's underlying claims fail.  Accordingly, her wrongful termination in violation of public policy claim fails as well.  *Arevalo*, 2013 U.S. Dist. LEXIS 68568, at *47 (summary judgment on wrongful termination in violation of public policy claim where FEHA discrimination claim failed); *Casagrande v. Allied Blending & Ingredients, Inc.*, No. CV-12-00498, 2013 U.S. Dist. LEXIS 4796, at *7 (C.D. Cal. Jan. 10, 2013) (same); *Alcala*, 2012 U.S. Dist. LEXIS 181892, at *33 (same).

### F. Hallman's Emotional Distress Claims Fail As A Matter Of Law.

Hallman admits that her emotional distress claims are based upon the same facts as her other claims.  (Opp. at 22.)  Hallman also does not dispute that if her underlying claims fail, her emotional distress claims fail as well.  (*See* Mot. at 21-22; Opp. at 22.)  As set forth herein, each of Hallman's underlying claims fail. Thus, her emotional distress claim fails.  *See Black v. Baxter Healthcare Corp.*, No. 96-55749, 1997 U.S. App. LEXIS 30422, at *13-14 (9th Cir. 1997) (summary judgment on emotional distress claims where plaintiff failed to establish discrimination); *Pleasant v. Autozone, Inc.*, No. CV-12-07293, 2013 U.S. Dist. LEXIS 86360, at *27-28 (C.D. Cal. June 19, 2013) (summary judgment on emotional distress claim where  termination was for legitimate, nondiscriminatory reasons); *Casagrande*, 2013 U.S. Dist. LEXIS 4796, at *6-7 (emotional distress claim failed where plaintiff did not establish discrimination); *Mondares v. Kaiser*

*Found. Hosp.*, No. 10-cv-02676, 2013 U.S. Dist. LEXIS 975, *20-21 (S.D. Cal. Jan. 3, 2013) (summary judgment on emotional distress claims where there was no unlawful discrimination).[14]

### G. Hallman's Retaliation In Violation Of FMLA Claim Fails As A Matter Of Law.

Hallman does not dispute that an employer is permitted to terminate an employee who receives twelve weeks of leave and fails to return to work at the end of that leave or who is unable to return to work at the end of her leave. (*See* Mot. at 22-23; Opp. at 23-24.)   Hallman also concedes that she received more than twelve weeks of leave – from August 1, 2011 until November 14, 2011, that she was advised that she would be terminated if she did not return to work by November 14, 2011, and that she failed to return to work by November 14, 2011, and was unable to return to work by that date. (SUF 83, 85, 89, 91-93, 109.) Thus, Hallman's claim fails as a matter of law.  *See Fiatoa*, 191 F.App'x at 553; *Maharaj*, 2012 U.S. Dist. LEXIS 163684, at *23; *Jackson*, 795 F.Supp.2d at 964-65; *Shaaban*, 2009 U.S. Dist. LEXIS 104996.[15]

---

[14] Hallman also fails to adequately respond to Defendants' argument that the conduct she complains of is insufficient to support an emotional distress claim. *See Pleasant*, 2013 U.S. Dist. LEXIS 86360, at *27-28 (refusing to give employee breaks, assigning him heaving lift tasks, refusing to give him a reasonable schedule, refusing to promote him, and terminating him was insufficient to support an emotional distress claim); *Mondares*, 2013 U.S. Dist. LEXIS 975, at *20-21 (personnel management decisions do not rise to the level of conduct necessary to support an emotional distress claim).  Her claim fails for this reason as well.

[15] As discussed above, Hallman's discussion regarding Sedgwick's handling of her short-term disability claim is irrelevant to whether she was lawfully terminated for failing to return to work after receiving more than twelve weeks of FMLA leave.

## H. Hallman's Retaliation For Engaging In Protected Activity Claim Fails As A Matter Of Law.

### 1. Hallman's Claim Fails Because She Did Not Engage In Protected Activity.

Hallman does not dispute that an employee's complaint to her employer is not protected under California Labor Code § 1102.5. (*See* Mot. at 24-25; Opp. at 24.) Yet, Hallman's opposition confirms that her retaliation for engaging in protected activity claim is based solely on her alleged complaints to Defendants regarding Abercrombie's failure to provide meal and rest breaks. (Opp. at 24.) In fact, she confirms Defendants alleged retaliation against her after she complained about meal and rest breaks is the sole basis for her claim. (*Id.*) Thus, Hallman has failed to establish that she engaged in protected activity, and her claim fails as a matter of law. *See Boyd v. AutoZone, Inc.*, No. C-11-00776, 2012 U.S. Dist. LEXIS 138552, at *32 (N.D. Cal. Sept. 26, 2012) (The California Supreme Court has made clear that Section 1102.5 only protects employees who report their concerns to public agencies. This statute does not concern employees who only report their suspicions directly to their own employer.").

### 2. There Is No Evidence Hallman Was Terminated For Complaining About Meal And Rest Breaks.

Even if this non-protected activity is considered, there is still no evidence that Defendants retaliated against Hallman for complaining about meal and rest breaks. Although Hallman makes the unsupported assertion that she was written up for failing to take meal and rest breaks, the sole evidence in the record establishes that Hallman complained about meal and rest breaks *after* she was written up. (SUF 29-30.) There is no evidence that Hallman was ever reprimanded for complaining about breaks or that the decision to terminate her was motivated by the complaint she made to HR over a year before she was terminated. As such, Hallman's § 1102.5 claim fails as a matter of law. *See Marino v. Akal*

*Sec. Inc.*, 377 F.App'x 683, 686 (9th Cir. 2010) (summary judgment on § 1102.5 claim because there was a legitimate reason for termination and plaintiff could not show pretext).

## IV.   CONCLUSION

Defendants Abercrombie & Fitch Stores, Inc., Stephanie Charles, and Meghan Watumull request summary judgment on each of Hallman's claims.

Dated: September 9, 2013        CAROTHERS DISANTE & FREUDENBERGER LLP and
                                VORYS, SATER, SEYMOUR AND PEASE LLP

                                /s/ Tyler B. Pensyl
                                Tyler B. Pensyl

                                Attorneys for Defendants Abercrombie & Fitch
                                Stores, Inc., Stephanie Charles, and Meghan
                                Watumull